UNITED STATES of America, Plaintiff-Appellee,

v.

James David ROSS, Defendant-Appellant.

No. 73–2256.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1974.

Lynne, District Judge, filed concurring opinion.

Charles L. Caperton, Dallas, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, District Judge.

WISDOM, Circuit Judge:

This appeal requires us to examine, if briefly, the scope of the power of the district judge to revoke probation, and the proper standard for waiver of the right to counsel at a hearing on revocation of probation.

James David Ross, appellant, attacks on two grounds the revocation of his probation, ordered by the district judge after a hearing at which Ross allegedly waived the right to counsel. First, the appellant contends, he was not "within the probation period" as required by Title 18 U.S.C. § 3653, at the time he committed the state offense which led to revocation. The court, therefore, was without power to revoke his probation for violation of its conditions. Second, the appellant contends that he was entitled to the assistance of his retained counsel at the revocation hearing and that his waiver of this right was not understandingly and intelligently made.

We hold that the appellant's first contention is groundless. We conclude, however, that Ross was entitled to the assistance of counsel at the revocation hearing and that his waiver was not made with an adequate understanding of the import of the proceeding in which he was involved. Accordingly, we vacate the revocation of his probation and remand the case to the district court.

I.

On January 8, 1973, after a jury trial, Ross and his co-defendants, were convicted for conspiracy to possess with intent to distribute twenty-six pounds of marihuana. The court imposed a sentence of three years imprisonment, and a special parole term of three years,

with the proviso that the defendant be confined to prison for four months, that the remainder of the sentence be suspended, and that Ross be placed on probation for a five year period following his release. The court stayed execution of the sentence for one week, until January 15, 1973, to allow Ross to put his business in order. Ross returned to his home in Dallas.

His stay at home was short. A few hours after he returned, Ross was arrested by Dallas police and charged with possession of amphetamines and narcotics (barbiturates), violations of state law. On January 9, 1973, the day after his arrest by Dallas police, the stay of the appellant's federal sentence was revoked, and he was taken into federal custody. When arraigned on the state charges, Ross pleaded guilty and was sentenced to thirty days imprisonment (which was probated for 12 months) and was fined

$400. Because of this conviction the district court conducted a hearing on May 7, 1973, to determine whether Ross's probation should be revoked. Through an oversight, Ross's retained counsel was not notified of the hearing. When the hearing was convened, however, Ross expressed a belief that the hearing was "sort of informal" and was willing to continue without the presence of counsel. Ross then signed a waiver of counsel form and the hearing proceeded on that basis. After a short dialogue with the defendant, the court revoked the probation and ordered execution of the full sentence as originally assessed.

## II.

Ross contends that Title 18, U. S.C. §§ 3651 and 3653,[1] establishing the guidelines for federal probation and its revocation do not permit a district court

1. Section 3651, in part, provides:
§ 3651. Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

Section 3653, in part, provides:
§ 3653. Report of probation officer and arrest of probationer.

At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period.

. . .

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed. June 25, 1948, c. 645, 62 Stat. 842; May 24, 1949, c. 139, § 56, 63 Stat. 96.

to revoke probation when an offense is committed after sentencing but before service of the sentence or probation has begun. The argument has a certain superficial, if semantic, appeal. As Ross observes, Section 3653 sanctions termination, alteration, or suspension of probation for a violation occurring "at any time within the probation period". The appellant would have us read this provision as exclusive; only if an individual is "on probation" may probation be revoked. Otherwise, he asserts, there are no conditions of probation which a potential probationer could violate and hence he would have no notice as to a course of conduct by which he could avoid revocation.

■ Aside from the fact that Section 3653 is not by its terms exclusive, case law and sound policy reject Ross's contentions. The standard of appellate review in probation cases is a strict one; only if the district court has abused its discretion will its determination to revoke probation be upset. United States v. Clanton, 5 Cir. 1969, 419 F.2d 1304, 1305–1306. There was clearly no abuse of discretion here. As long ago as 1940, this Court observed, in dictum, that a district court had acted properly in revoking the probation of a prisoner who was discovered to be in possession of narcotics while awaiting transportation to prison. Cline v. United States, 5 Cir. 1940, 116 F.2d 275, 276 (per curiam) (dictum).

At least two other Courts of Appeals have also recorded their rejections of the appellant's position: United States ex rel. Sole v. Rundle, 3 Cir. 1971, 435 F.2d 721; Longknife v. United States, 9 Cir. 1967, 381 F.2d 17. Although *Rundle* involved a state prosecution and

*Longknife* was a federal matter, both appear to sanction revocation of probation before the time the probation actually begins. In both cases probation was granted as the result of a misrepresentation by the defendant to the sentencing court. Revocation was held to be proper, since probation would not have been granted if the court had had accurate information at the time of sentencing. See *Rundle,* 435 F.2d at 724–725; *Longknife,* 381 F.2d at 20. Since the defendant here was arrested on state charges the day of sentencing, the court can hardly be thought to have abused its discretion in revoking probation once Ross had pleaded guilty to those charges. Only a narrow and proscriptive reading of Sections 3651 and 3653 could yield the contrary result urged by the appellant. We do not so read these provisions.

Sound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences; an immediate return to criminal activity is more reprehensible than one which occurs at a later date.

### III.

To conclude that it was not improper per se for the district court to revoke the appellant's probation is not to hold that the hearing at which revocation was ordered was properly conducted. The appellant asserts, first, that Mempa v. Rhay, 1967, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, establishes a right to the assistance of counsel at every critical stage of a criminal proceeding, including a hearing on revocation of probation and, second, that his waiver of that right was ineffective because it was not intelligently and knowingly made.[2] we agree with both of these contentions.

2. In this section of his brief, the appellant also cites Gagnon v. Scarpelli, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 which applied the extensive due process requirements laid down for parole revocation hearings by Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, to hearings on the revocation of probation. It is apparent that if *Gagnon*'s standards were applicable

to this controversy, a new revocation hearing would be required. *Gagnon* was decided by the Supreme Court on May 14, 1973, however, seven days after Ross's probation revocation hearing. Unlike *Morrissey,* which was by its terms limited to "future parole hearings," *Gagnon* was silent as to its retrospective application. It might be argued that the Supreme Court did not intend *Gag-*

Although the district judge recognized that Ross was entitled to counsel at the hearing,[3] a brief explanation of our conclusion that counsel was required may be appropriate.

■ As Ross notes, Mempa v. Rhay instructs that "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257, 19 L.Ed.2d at 340. Although Ross was not an indigent, he was entitled to the presence and assistance of his retained counsel at the revocation hearing if it was a proceeding to which *Mempa* applies. In this Circuit, however, *Mempa* has been read as requiring counsel only at those relocation hearings at which resentencing takes place. Shaw v. Henderson, 5 Cir. 1970, 430 F.2d 1116, 1118–1119.[4] Since we are convinced that his revocation was essentially resentencing, we have no more difficulty than did the district court in concluding that counsel was required.

■ We view the revocation as a resentencing for several reasons. First, Ross was arrested on the state charges the same day that a relatively lenient federal sentence was imposed. The one week stay of execution of his sentence was immediately vacated and he was placed in federal custody. Thus Ross was not on probation when the offense occurred and it was not, strictly speaking, a violation of probationary terms that resulted in the revocation. Second, the revocation hearing was held within a few days of the time at which Ross was scheduled to be released, that is, within a few days of the completion of the confinement period of his original sentence. By revoking probation the district court in effect vacated its earlier suspension of sentence and increased the term of Ross's incarceration from the original four months to a full three year term. Finally, the court in its colloquy with Ross at the revocation hearing indicated that it viewed the revocation hearing as an opportunity to correct an error in sentencing at trial:

THE COURT: Well, I will say this to you, Mr. Ross: You sold me a bill of goods when we tried the matter.

I personally had some uncertainty in my mind as to whether you were telling the truth. The circumstances were very strong against you. I thought you made a right good impression and there was a little uncertainty in my own mind.

After the lie detector test, I thought that you were probably guilty and, of course, the jury had passed on it. It wasn't up to me to pass on your guilt or innocence, but I did think you were a young man of some promise and gave you what I considered a relatively light sentence.

So I was not greatly impressed with your honesty or credibility the day after you got home and you were found in possession of not only marihuana, but a quantity of hard narcotics, too.

---

non to have a retroactive effect, a position seemingly confirmed, in passing, by the Court. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In any event, we need not wrestle with the problem, since we must vacate and remand this case even under pre-*Gagnon* standards. *Gagnon's* standards will apply, of course, to further proceedings on remand.

3. The court continued, as follows:
 THE COURT: Okay. For the record, then, I advise you that you are entitled to counsel at this hearing.
 DEFENDANT ROSS: Yes, sir.

THE COURT: If you have retained Mr. Caperton, you are entitled to have him here.
 If you have no money with which to employ a lawyer, you are entitled to appointment of counsel as an indigent person.
 I am sure you understand that, but I want to be sure you do.

4. This reading of *Mempa* is hardly universal. See Gunsolus v. Gagnon (Scarpelli v. Gagnon), 7 Cir. 1971, 454 F.2d 416; Hewett v. North Carolina, 4 Cir. 1969, 415 F.2d 1316; Ashworth v. United States, 6 Cir. 1968, 391 F.2d 245, and may not be viable in the post-*Gagnon* world.

I revoke the probation and order the sentence into execution.

That's all for now.

It is clear, of course, that a defendant, once properly advised of his right to counsel may waive it, Miranda v. Arizona, 1966, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694, 707, but it is equally clear that the waiver must be made with a full understanding of the nature of the right to be forgone as well as the possible consequences of the charges against the defendant and of the proceeding in which he is involved. Von Moltke v. Gillies, 1948, 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309, 320–321. Particularly crucial is the role of the trial judge, whose penetrating interrogation and careful explanation can assure that the waiver of the right to counsel by the defendant is made with a full understanding of its ramifications. Von Moltke v. Gillies, 332 U.S. at 723–724, 68 S.Ct. 316.

Applying such a standard here, the record fails to show that Ross's waiver of counsel was a knowing and intelligent one. He was told that he had a right to counsel, but at no point was he advised of the dire consequences that could flow from the proceeding; that is, that he might immediately be returned to prison to serve the previously suspended two years and eight months of his term. Although the district judge certainly determined that Ross's waiver was voluntary, his inquiries never touched upon Ross's understanding of the significance of the waiver—or of the hearing itself. Indeed, from Ross's statements, the court reasonably could have inferred that Ross did not actually grasp the import of the proceeding:

THE COURT: Come around here, please.

I understand through an oversight Mr. Capteton was not advised to be here today.

Is that your understanding?

DEFENDANT ROSS: Yes, sir.

THE COURT: He still represents you?

DEFENDANT ROSS: Yes, sir.

THE COURT: We will have to have him come down, I am told he is in trial today and it will take a few days to get him here.

DEFENDANT ROSS: Your Honor, I understood that this hearing was sort of informal and that he wouldn't have to be here.

I would waive that right and not have him here is okay with me.

THE COURT: You want to waive your right to have Mr. Caperton or some other lawyer here on your behalf?

You are entitled to do that if you wish.

DEFENDANT ROSS: Yes, sir.

THE COURT: You are entitled to have your lawyer present here just as you were at the trial and so forth and I want to be sure you understand that.

DEFENDANT ROSS: Well, yes, sir. I would just like to talk to you about it if I could.

The district judge did nothing to counteract impression that the hearing was "sort of informal", merely reiterating to Ross that he could waive counsel if he so desired.

Finally, we cannot overlook the fact that the absence of the defendant's counsel was due to an oversight on the part of the Government itself. The fault was not the defendant's. In these circumstances, with the absence of counsel an accomplished fact, the standard for concluding that the waiver was knowing and intelligent must be high indeed. Here, the standard was not met.

Accordingly, we vacate the judgment revoking Ross's probation and remand the case to the district court for a new hearing on revocation of the defendant-appellant's probation.

LYNNE, District Judge (concurring).

I concur in the result. However, I would not pretermit reconsideration by

the district court of its power to revoke Ross's probation for an offense committed by him prior to the commencement of his probationary sentence.

Counsel for Ross should be unfettered by Part II of the court's opinion to contend that a close reading of 18 U.S.C. §§ 3651, 3653 (1970), a statute which I would construe strictly, seems to require that probation under the split sentencing provisions commence after the period of incarceration. Moreover, the cases cited in Part II rely on the "right-privilege" distinction which has been firmly discredited, particularly in Footnote 4 of Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The district court should be left free to determine whether the reasoning in *Longknife* and *Rundle* will withstand current due process scrutiny.