**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Harris CARTWRIGHT, a/k/a
William J. Cartwright,
Defendant-Appellant.**

**No. 81–2059.**

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

---

James E. Davis, Texarkana, Ark. (Court-appointed), for defendant-appellant.

John M. Potter, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal requires us to decide whether it is lawful for a court to revoke an individual's probation before it actually begins without giving him written notice of the charges which serve as the basis for revocation. Our decision is that it is not, so we must, therefore, reverse the judgment of the district court.

## I.

Robert Harris Cartwright was convicted by a jury of several counts of unlawful activities in his dealings with a number of financial institutions.[1] Specific details about his criminal conduct need not be repeated here as they are summarized in our affirmance of his conviction and sentence. *United States v. Cartwright*, 632 F.2d 1290 (5th Cir.1980).

While his case was pending appeal Cartwright secured a bond, which, among its various conditions contained a proviso that he was not to leave the jurisdiction of the

---

1. The jury found Cartwright guilty of Counts 1, 2, 3, 4, 6, 7, 9, 10, 12, 16, 17, 19, 26 and 28. The jury acquitted Cartwright of Counts 5, 14, 21, 23 and 30. The jury was unable to reach a verdict on Counts 8, 13, 18, 20, 22, 27 and 29. Upon the government's motion, these counts were subsequently dismissed by the trial court, as was Count 11, dismissal of which was moved by Cartwright.

Cartwright was sentenced by the court as follows: Counts 1, 2 and 3, four years imprisonment to serve as to each of these counts, the terms to run concurrently with each other; Counts 4, 6 and 7, four years each, to run concurrently with each other but consecutive to the sentence imposed in Counts 1, 2 and 3; Counts 9 and 10, four years on each count, to run concurrently with each other but consecutive to the previous periods of incarceration, for a total of twelve years to serve; Counts 12, 16, 17, 19, 26 and 28, the imposition of sentence was suspended and Cartwright was placed on probation with supervision for a period of five years. Probation was to commence upon completion of the terms of incarceration.

trial court without its express permission. On July 17, 1979, he requested leave from the trial court to travel outside of the jurisdiction to Jacksonville, Florida for four consecutive days in July solely to engage in conduct in furtherance of his employment. The trial court granted Cartwright's permission the same day that the motion was argued with an admonition for him to "communicate with his probation officer prior to his departure to, and immediately upon his return from, Jacksonville, Florida." But the 4th day of August signaled a different eventuality. Cartwright left the jurisdiction of the trial court on a chartered plane piloted by a Jerry Cobb for a questionable business rendezvous in the Grand Cayman Islands. While there, he opened a bank account and then returned to Houston. The evidence discloses that Cartwright, busy businessman that he was, never reported either his departure or his return to his probation officer as he was instructed to do by the district court.

Apparently maintaining a close vigil on Cartwright's affairs, a government probation officer informed the trial court by letter[2] dated January 5, 1981 that Cartwright's "activities have continued to draw attention of law enforcement authorities." Included in this letter was a summary of alleged illegalities and a recommendation to the court that "his appeal bond be revoked and consideration given to revocation of his probation." This letter did not mention Cartwright's unauthorized trip to the Grand Cayman Islands or his failure to report departure or return to his probation officer. But it soon bore fruit for the government.

The district court revoked Cartwright's probation on the basis of his unauthorized and unreported trip outside of the court's jurisdiction to the Grand Cayman Islands. In the petition for revocation, *see* note 2, *supra*, there was never any mention of this charge as a basis for revocation. Consequently, Cartwright did not receive notice

---

**2.** The full text of the letter with the charges posed for revocation is as follows:

The Honorable Carl O. Bue, Jr.
U.S. District Judge
Houston, Texas

   RE:  CARTWRIGHT, Robert Harris
         Cr. No. H–78–109–S

Dear Judge Bue:

On June 4, 1979, Robert Harris Cartwright appeared before Your Honor for sentencing as to his conviction, by jury trial, on charges relating to false loan applications to a federally insured savings and loan association by an officer of said association.

He was sentenced to serve four years each as to Counts 1, 2, and 3, concurrent, to be followed by four years each as to Counts 4, 6, and 7, concurrent, however, consecutive to Counts 1, 2, and 3. The sentences were to be followed by an additional four years each as to Counts 9 and 10, concurrent, however, consecutive to the previously mentioned periods, for a total of 12 years imprisonment.

A five year period of probation, with supervision, was imposed as to Counts 12, 16, 17, 19, 26, and 28. The period of supervision was ordered to commence upon completion of the period of incarceration ordered.

Following sentencing, Cartwright remained at liberty on an appeal bond. On December 18, 1980, Cartwright's conviction was affirmed by the Fifth Circuit Court of Appeals.

Since release on the appeal bond, June 4, 1979, Cartwright's activities have continued to draw the attention of law enforcement authorities.

Of particular interest is a scheme investigated by the U.S. Postal Inspectors Service, Houston, Texas. The scheme, involving mail and wire fraud, and use of fictitious names, began during February, 1980, and continued active in the Houston, Texas, area until approximately May 22, 1980. The case involved an intricately and elaborately contrived plan whereby false and fraudulent loan applications were submitted to various lending institutions that specialized in loans by mail. As a result of the activities employed, a known public loss in excess of $55,000.00 has been disclosed.

Based upon the subject's continuing criminal activities, it is recommended that his appeal bond be revoked and consideration given to revocation of his probation. ·

Assistant U.S. Attorney Samuel G. Longoria stands ready to present necessary documents and witnesses to substantiate the previously noted claims against the defendant.

   Respectfully submitted,
   (s)  Mark S. Gerlich
   Mark S. Gerlich
   U.S. Probation Officer

MSG/dm
Attachment
APPROVED FOR SUBMITTAL:
(s)  Joann Russell
Joann Russell, Supervisor
Presentence Unit

of this charge as a basis for revocation before the final revocation hearing began.[3]

## II.

The district court relied on our decisions in *United States v. Ross,* 503 F.2d 940 (5th Cir.1974) and *United States v. Tucker,* 524 F.2d 77 (5th Cir.1975) (per curiam) *cert. denied,* 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976) to revoke Cartwright's probation twelve years before it was actually to begin and add eight years to his sentence. The court was persuaded that these decisions, coupled with *United States v. Garza,* 484 F.2d 88 (5th Cir.1973) which stated that revocation of probation was a matter within the sound discretion of the district court and would not be disturbed on appeal absent a clear showing of an abuse of that discretion, spoke authoritatively on its power to revoke future probation.

In *Ross,* we held that a defendant's probationary status could be revoked before it began. However, in that case we were confronted with a criminal defendant who had been convicted of a crime before his probation had commenced. Ross' argument against revocation was that 18 U.S.C. §§ 3651 and 3653[4] precluded a court from

3. At the final revocation hearing the airline pilot who took Cartwright to the Grand Cayman Islands, Jerry Cobb, was called to testify by the government. Cobb testified, over the objection of Cartwright, that he did take Cartwright to the Grand Cayman Islands. When Cartwright objected to the government's questions the following colloquy transpired between the United States Attorney, defense counsel, and the court.

    U.S. Attorney:

    Q Did you make a flight on or about August the 5th of 1979?

    A Yes, sir.

    Q Where was that flight?

    [By Defense Counsel]: May it please the Court, may I rise to raise an objection? Insofar as I can—as I understood the motion to revoke, the grounds therefor were solely and only regarding the alleged scheme that's been testified to here this morning before Your Honor, and unless this is part of that scheme, we object to any such testimony coming forth, for lack of notice to the defense of any allegation regarding a pilot, unless it's connected with the allegation that they are using on the—I believe it's the third paragraph, Judge, of the letter attached.

    That's the sole and only allegation to either revoke the probation or to revoke the bond. [By U.S. Attorney]: Your Honor, I present the evidence only for the purpose of whatever weight the Court wishes to give it. He is right, in that it's not stated in the reason for revocation. However, it could be.

    This witness will not take but two or three minutes, and the Court can certainly disregard the testimony and give it no weight, if it chooses to do so. So I think we could just proceed very expeditiously here and get this matter out of the way.

    [By] THE COURT: Well, is this basis for revocation?

    [By U.S. Attorney]: Your Honor, I think it could be. What I expect the evidence to show is that this man transported Mr. Cart-

wright out of this district, at a time when the conditions of his bond required him to remain here, unless he got the permission of the Court to leave; showing that the person has no desire to follow the rules set down by the Court.

[By Defense Counsel]: It is our position that we have had no notice of this as a ground of revocation at any time, and we feel that we should have had some notice of it, so that we can attempt to prepare for it.

[By] THE COURT: I'll hear it, ... Mr. Looney.

[By Defense Counsel]: May we have just a running objection, Your Honor.

[By] THE COURT: Yes, sir, you may.

Other evidence on a fraudulent banking scheme was presented during the hearing. On February 4, 1981, the district judge issued his order revoking Cartwright's probation on four counts and sentenced him to serve two years in prison as to each of those counts. Eight years were thus added to Cartwright's incarceration time.

4. At the time *Ross* was decided, 18 U.S.C. § 3651 provided in part—

    § 3651. Suspension of sentence and probation.

    Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

    Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when sat-

348

revoking an individual's probation before it began. 503 F.2d at 942–43.

The opinion for the court in *Ross* confronted this contention head-on. While acknowledging that the suggestion that a probationer's status could not be revoked prior to its actual commencement has a "certain superficial, if semantic, appeal," *Id.* at 943, Judge Wisdom observed for us that 18 U.S.C. § 3653 "is not by its terms exclusive." *Id.* In "well-chosen words," *see, United States v. Torrez-Flores,* 624 F.2d 776, 784, n. 5 (7th Cir.1980) (observing that probation may be revoked before the period commences), he reasoned that "[s]ound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences; an immediate return to criminal activity is more reprehensible than one which occurs at a later date." 503 F.2d at 943. But Cf., *United States v. O'Quinn,* 689 F.2d 1359 (11th Cir.1982). The holding in *Ross* was based upon our decision in *Cline v. United*

*States,* 116 F.2d 275, 276 (5th Cir.1940) that a district court had acted properly in revoking the probation of a prisoner who was discovered to be in possession of narcotics while awaiting transportation to prison. We also pointed out in *Ross* that two other appellate courts had rejected a similar contention that probation could not be revoked before it began. *See e.g. United States ex rel. Sole v. Rundle,* 435 F.2d 721 (3rd Cir. 1971) and *Trueblood Longknife v. United States,* 381 F.2d 17 (9th Cir.1967), *cert. denied,* 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968).[5] Finally, in *Tucker,* 524 F.2d at 78, we upheld a revocation of future probation where the probationer was only *alleged* to have been involved in illegal activities during the pendency of his appeal.

Cartwright contends that the district court was not empowered to revoke his probation because the basis upon which it was actually revoked—travel to the Grand Cayman Islands—is "non-criminal" activity.[6] As a result he maintains that 18 U.S.C.

---

isfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

and § 3653 provided in part—

§ 3653. Report of probation officer and arrest of probationer.

At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period.

. . . . .

As speedily as possible after arrest the probationer shall be taken before the court for

the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed. June 25, 1948, c. 645, 62 Stat. 842; May 24, 1949, c. 139, § 56, 63 Stat. 96.

**5.** State court decisions are not to the contrary. *E.g., State v. Sullivan,* Mont., 642 P.2d 1008 (1982); *Commonwealth v. Wendowski,* 278 Pa. Super.Ct. 453, 420 A.2d 628 (1980); *Hart v. State,* 364 So.2d 544 (Fla.Dist.Ct.App. 4th 1978); *State v. Morris,* 98 Idaho 328, 563 P.2d 52 (1977); *Brown v. Commonwealth,* 564 S.W.2d 21 (Ky.1977); *Parrish v. Ault,* 237 Ga. 401, 228 S.E.2d 808 (1976); *Wright v. United States,* 315 A.2d 839 (D.C.1974); *Martin v. State,* 243 So.2d 189 (Fla.Dist.Ct.App. 4th 1971); *Coffey v. Commonwealth,* 209 Va. 760, 167 S.E.2d 343 (1969).

**6.** In urging us to sustain the district court's decision, the government argues that cases from two other circuits have "extended" our decision in *Ross* and upheld the revocation of a defendant's probation for even noncriminal activity. *United States v. Dane,* 570 F.2d 840 (9th Cir.) *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1977), and *Tiitsman v. Black,* 536 F.2d 678 (6th Cir.1976). The government thinks that we should follow suit. We disagree that these cases actually extend *Ross.*

§ 3653 is required to be exclusively read in that the violation must have occurred during the actual probation period. The gist of this argument is that because travel to the Grand Cayman Islands is not of itself unlawful, he committed no crime in going there and therefore *Ross'* rationale does not apply to his situation. While this is certainly an interesting argument it has no basis in fact because Cartwright's violation here was a crime. As a consequence, *Ross* forecloses this argument.

It is misleading and just plain wrong for Cartwright to paint his unauthorized and unreported excursion to the Grand Cayman Islands as non-criminal. The fact is that it is not. The district court viewed Cartwright's travel to the Grand Cayman Islands as a violation of the "conditions of his probation with supervision" and an act in "contravention of [its] travel order of July 17, 1979." Violation of a court's travel order or the condition of an appeal bond is a serious offense. Indeed, we have previously recognized that "the willful breach of a court order imposing a condition of release pending appeal constitutes a contempt of court. *United States v. Williams,* 622 F.2d 830, 836 (5th Cir.1980) (en banc). Contempt is a crime. *Id.* at 837, n. 13 (collecting cases). "[I]t is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522, 528 (1968). Cartwright disobeyed the terms of the district court's travel order of July 17, 1982 which permitted him to go to Jacksonville, Florida, and required him to communicate with his probation officer before his departure and after his return. Instead, he went to the Grand Cayman Islands without permission. This was a crime unto itself, separate

from and independent of any other substantive offense. The district court would have been on sure ground had it punished Cartwright for this act.[7]

We do not endorse, however, the action of the district court taken here. Rather than revoking Cartwright's probation because of his contempt[8] or basing its revocation decision on the government's allegations of Cartwright's involvement in a fraudulent banking scheme which it had authority to do under *Tucker,* the district court here concluded that a "revocation hearing [was] an inappropriate forum in which to consider evidence of alleged crimes with which defendant has not been charged formally." Thus, the district court expressly declined even to consider the government's allegations included in the petition for revocation. But the petition for revocation was the only written notice Cartwright received of the charges intended to form the basis for probation revocation. Herein lies the rub. This brings us to the pivotal issue in the case.

Cartwright contends that he should have received written notice of the grounds upon which his probation was actually revoked. It is true that under *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), one of the minimum requirements of due process is that a probationer receive written notice of the charges against him. *See also, Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (stating the six minimum requirements of due process for a parolee facing revocation of his parole status of which written notice of all charges is one). The record does not dispute Cartwright's claim that he did not receive written notice of the grounds upon which the district court revoked probation and increased his sentence (*i.e.,* unauthor-

---

**7.** 18 U.S.C. § 401 states in part—
a court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistence to its lawful writ, process, order, rule, decree, or command.

**8.** We do not reach the issue of whether a prison term of eight years for criminal contempt is constitutionally permissible.

ized and unreported travel outside of the court's jurisdiction). The government concedes that it failed to provide him with written notice of this charge. Notwithstanding the express imperative of *Scarpelli*, the government contends that written notice to Cartwright was not required because he had *actual* notice of the charges which served as the basis for his probation revocation. We are not persuaded by this argument. First, we observe that *Scarpelli* expressly holds that an individual facing the possibility of probation revocation is entitled to "written notice of the claimed violations," *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499, prior to the final hearing. *Scarpelli*, 411 U.S. at 782, 93 S.Ct. at 1759, 36 L.Ed.2d at 662. At the final revocation hearing airline pilot Jerry Cobb testified over the strenuous objection of Cartwright's defense counsel. But Cobb's testimony was not about the allegations in the petition for revocation. It was about travel outside of the court's jurisdiction to the Grand Cayman Islands—a charge Cartwright had not received notice of. When Cartwright objected that Cobb's testimony was not stated as a basis for revocation the United States Attorney conceded that it was not, but feebly suggested to the district court that it could "certainly disregard the testimony and give it no weight." Yet, the district court gave it *substantial* weight, basing its *entire* decision on the evidence of Cartwright's trip to the Grand Cayman Islands.

Equally persuasive to us that written notice is essential is the decision we made in the exercise of our supervisory powers, requiring district courts to give "notice to probationers of proposed extensions" of their probationary period, *see United States v. Cornwell*, 625 F.2d 686 (5th Cir.) *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 610 (1980), which has been followed by other courts. *See Forgues v. United States*, 636 F.2d 1125, 1127 (6th Cir.1980). If notice is required of a mere extension of an individual's probation, then certainly notice is required to completely revoke a person's probation. An extension of probation still entitles the probationer to remain at liberty, albeit longer under specified conditions. The revocation of probation, on the other hand, entails a *complete* deprivation of this conditional liberty. The substantiality of the probationer's interest in remaining at liberty is what prompted the Court in *Scarpelli* to require that he be given written notice of all the charges which might result in a revocation of his probation. 411 U.S. at 782, 92 S.Ct. at 1759, 36 L.Ed.2d at 662. Cf. *Kartman v. Parratt*, 535 F.2d 450, 456 (8th Cir.1976); *United States v. Webster*, 492 F.2d 1048, 1051 (D.C.Cir.1974). In light of these important considerations, we hold that notice given Cartwright on the charges which formed the basis for revocation is inadequate for purposes of due process and fundamental fairness.

### Conclusion

We conclude that the district court was in error when it revoked Cartwright's probation and added eight years to his sentence for a violation of the conditions of his appeal bond and the court's travel order without the Government having provided him with written notice of the charges upon which his probation was actually revoked. We therefore reverse the judgment and remand to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.