**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lorenzo YANCEY, Defendant-Appellant.**

**No. 86–2509.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1987.

Decided Aug. 13, 1987.

As Amended Oct. 7, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 27, 1987.

---

Before BAUER, Chief Judge and CUDAHY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

This is a case of last impression. The probation provisions of the Comprehensive Crime Control Act of 1984, 18 U.S.C. § 3565, make clear that a court may revoke probation for a preprobation offense. The provisions are to become effective on November 1, 1987. In *United States v. Dick*, 773 F.2d 937 (7th Cir.1985), however, we interpreted the current Probation Act to prohibit a court from revoking probation for acts committed prior to the commencement of probation. Lorenzo Yancey contends that the district court improperly revoked his probation under the current law, see 18 U.S.C. § 3653, for an offense which occurred prior to the term of probation. On reexamination, we conclude that *Dick* was wrongly decided. We now hold that the Probation Act does not so limit courts' authority, and overrule *Dick*. Thus, we find that the district court had the authority to revoke probation. The defendant also challenges the underlying finding of insurance fraud which justified revocation. We find that the revocation of Yancey's probation comported with due process of law and affirm.

I.

Lorenzo Yancey pled guilty to two counts of mail fraud stemming from false insurance claims sent to State Farm Insurance Company. Yancey received a five-year sentence[1] in February, 1984, to be followed by five years of probation. In September, 1984, while Yancey was in prison, the government seized a letter which Yancey had written to a Janice Johnson, c/o Pierce. The letter contained the following passage:

I'm sending you a letter attached, for you to take to Mr. Blacks (sic) office when my case settles' (sic).

I also sent one to his office so they too will know what to do.... Your name is

Sandra Zunker Brown, Jenner & Block, Chicago, Ill., for defendant-appellant.

Jeffrey E. Stone, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

---

1. The sentence was later reduced to four years in prison.

Janice Johnson, 7840 South Marshfield. My name is Raymond Thompson along with Mrs. Julie Patrick we all got hit by a car while riding the bus (C.T.A.) last year.

On the basis of the letter, the government petitioned the court to revoke Yancey's probation. At the revocation hearing, the government showed that a Janice Johnson and a Raymond Thompson had filed a claim for personal injuries sustained when a car struck a CTA bus on which they were riding. To show that the claim was false and attributable to Yancey, the government relied on the seized letter. On the basis of the evidence presented, the court concluded that Yancey had intended to deceive the CTA and revoked his probation. Yancey appealed.

While Yancey's appeal was pending, we decided *United States v. Dick*, 773 F.2d 937 (7th Cir.1985), which held that the district court could not revoke probation for an event that occurred before the beginning of the probationary term. Yancey's appeal was summarily remanded to the district court for reconsideration in light of our decision in *Dick*. On remand, the government argued that probation was properly revoked since Yancey's actions constituted fraud at sentencing—an exception to the rule stated in *Dick*. We noted in *Dick* that a court could resentence a defendant based on a preprobation offense, if the defendant had wrongfully and knowingly withheld important facts at sentencing. *Dick*, 773 F.2d at 942. At Yancey's sentencing hearing he stated: "As I have been getting older, I have been staying out of trouble." The judge did not hold a hearing on remand, but found that he had been misled by Yancey's statement at sentencing, and reimposed his order revoking probation based on the "fraud on the court" exception approved in *Dick*. Yancey now appeals from this order.

II.

Yancey argues that the district court was required to hold a hearing on remand to determine whether he had committed fraud at sentencing sufficient to allow the court to revoke probation for a preprobation offense. The issue on remand was whether Yancey had committed "fraud at sentencing" to permit revocation even in light of *Dick*. While finding that revocation for a preprobation offense was generally impermissible, *Dick* characterized other cases allowing such revocation as creating an exception to the rule. Those cases established the limited exception that a court could revoke probation for a preprobation offense when the court had imposed sentence without full knowledge of the facts. Clearly, the district court here sentenced Yancey without the knowledge that he would continue to engage in illegal activities. However, the cases themselves suggest a narrower basis for finding "fraud on the court" than the wording in *Dick* would suggest. In *United States v. Torrez-Flores*, 624 F.2d 776 (7th Cir.1980), the defendant had represented that he had no criminal record. The sentencing judge warned the defendant that if his representation was false, his probation would be revoked. In *Trueblood Longknife v. United States*, 381 F.2d 17 (9th Cir.1967), *cert. denied, sub nom. Longknife v. United States*, 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968) the court found that the defendant knowingly concealed a prior bankruptcy from his probation officer. Rather than lying about his past history, Yancey made a subjective representation about himself. To truly examine the verity of the statement we would need to know just how much trouble he used to get into—or whether he only defined trouble as getting into the hands of the police.[2] This is not to excuse such behavior. A sentenc-

2. Yancey's statement to the district court probably contained some element of truth. It's harder to get into trouble as you get older. A wise man once said: much of what passes for virtue is either poor health or old age. *Accord*, Shakespeare, The Tempest, Act II, scene 1, line 141, (noting that Gonzalo would stay sober only for lack of wine.) *But see* New York Times, Feb. 13, 1985, p. 6, col. 4, *150 Arrests and Still Going*. (highlighting the activities of then 66 year-old "Pops" Panczko). We find it unnecessary to examine the philosophical subtleties involved in light of our disposition of the case.

ing judge is entitled to, and often must, rely on the statements of the defendant. We note only that it is difficult to characterize such statements as a "fraud on the court."

■ The government urges that we find that the second order was not required and that the district court properly revoked probation in its first order. Although *Dick* represented a valiant effort to divine congressional intent from the unclear and sometimes conflicting probation statutes, we are persuaded that a broader reading is necessary to give meaning to the policies behind the Act. In addition, we find that subsequent congressional action in revising the statutes, clarified existing law. We therefore conclude that the Probation Act did not limit judicial authority to revoke probation to acts committed within the probation period.

Federal judicial power to revoke probation derives solely from Congress. *Affronti v. United States*, 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955). Thus, to determine whether a court may revoke probation for an offense which occurred prior to the commencement of the period of probation, we must examine the relevant statutes. There are two statutes which arguably control the authority of the judiciary to revoke probation. Section 3651 of Title 18 provides:

Suspension of sentence and probation.

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

\* \* \* \* \* \*

The court may revoke or modify any condition of probation, or may change the period of probation.

Read literally, the section authorizes a court to revoke only the *conditions* of probation. The other provision which arguably authorizes revocation of probation is section 3653 of Title 18, which provides as follows:

At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period. \* \* \*

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

Any authority conferred by section 3653 is necessarily limited by the initial phrase, "At any time *within* the probation period" (emphasis added). However, section 3653 appears directed to the more specific power of the court to issue an arrest warrant and the procedures after arrest.

Although a literal reading of the two statutes would limit judicial power to revoke probation to the probation period, many courts have allowed revocation for acts occurring prior to the commencement of probation. *See United States v. Dozier*, 707 F.2d 862 (5th Cir.1983) (probation could be revoked for jury tampering); *United States v. Cartwright*, 696 F.2d 344 (5th Cir.1983) (probation could be revoked for suspicious activities while free on appeal bond, but only with sufficient notice); *United States v. Torrez-Flores*, 624 F.2d 776 (7th Cir.1980) (probation could be revoked for lying at sentencing about existence of criminal record); *United States v.*

*Tucker*, 524 F.2d 77 (5th Cir.1975), *cert denied*, 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976) (probation could be revoked for act committed during pendency of appeal); *United States v. Ross*, 503 F.2d 940 (5th Cir.1974) (probation could be revoked for act committed hours after sentencing); *Trueblood Longknife*, 381 F.2d 17 (probation could be revoked for withholding pertinent facts from court and probation officer). *But see United States v. Wright*, 744 F.2d 1127 (5th Cir.1984) (probation could not be revoked for an offense committed while on parole).

In *Dick*, we determined that section 3653 was the sole source of revocation authority. We read section 3651 literally to limit any authority provided therein to revocation of the *conditions* of probation. We determined that this was necessary to give "full meaning and effect" to all provisions in both sections of the Probation Act; if the authority to revoke probation derived from section 3651, the second provision of Section 3653, authorizing revocation of probation, would be meaningless. *Dick* thus adopted a literal and narrow reading of the probation revocation authority.

The Third Circuit has rejected our approach in *Dick*. *United States v. Veatch*, 792 F.2d 48 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). There, the court concluded that the authority to revoke probation is not limited to the probation period. Rather than a literal reading of the statutes involved, the *Veatch* court employed a contextual reading of the Probation Act, and determined that section 3651 should not be read literally to allow the court to revoke only the conditions of probation. The court interpreted the Act in light of its general purposes. The general purposes of the Probation Act are best expressed in *Roberts v. United States*, 320 U.S. 264, 64 S.Ct. 113,

88 L.Ed. 41 (1943), where the Court noted probation serves to allow an offender the opportunity for rehabilitation,

> without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity. To accomplish this basic purpose Congress vested wide discretion in the courts.

320 U.S. at 272, 64 S.Ct. at 117. The Third Circuit decided that a broader reading of the authority conferred was necessary to effectuate the goals of the Act. The continuing power of the court to revoke probation is an additional incentive for rehabilitation. We find the *Veatch* approach persuasive. There is no indication that Congress would have chosen to treat the power to revoke conditions of probation different from the power to revoke probation itself. In addition, we note that section 3651 confers power on the court to "change the period of probation." We see no reason why the power to shorten would not necessarily include the power to eliminate probation. We believe that only a broader and less literal reading of the statute can effectuate the policies behind the Act.

Moreover, we are persuaded by the enactment of the Comprehensive Crime Control Act of 1984, that the Probation Act was never intended to limit revocation authority to the period of probation. In 1984, Congress drafted a sweeping revision of criminal law statutes, including the Probation Act. The new legislation allows a court to revoke probation if a "defendant violates a condition of probation *at any time* prior to the expiration of termination of the term of probation." (emphasis added) 18 U.S.C. § 3565 (effective November 1, 1987).[3] Thus, under the new Act, a court's

---

3. § 3565. Revocation of probation.

    (a) Continuation or revocation.—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—

    (1) continue him on probation, with or without extending the term of modifying or enlarging the conditions; or

    (2) revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing.

ability to revoke probation for a preprobation offense appears clear. The new Act was passed before our decision in *Dick*.[4] Therefore the new wording could not have been intended as a change in the law in response to our prior reading of the Probation Act. In fact, the new language is consistent with the then-existing interpretation of the Probation Act, as stated in *Ross, supra.*

The legislative history of the Comprehensive Crime Control Act of 1984 is not enlightening as to the reasons for the change in language in the probation provisions. While a subsequent Congress cannot override the intent of an enacting Congress, a subsequent amendment is strong, though not conclusive, evidence of legislative intent. *Sutherland Stat. Const.* § 49.11 (4th Ed.). One well-recognized indication that a subsequent amendment was intended to clarify, rather than change existing law, is the existence of doubt or ambiguity in the previous statute. *Id.* When the new statute was drafted, no court had found that the Probation Act generally prohibited revocation for a preprobation offense. However, courts had noted the difficulty of interpreting the statutes and determining whether jurisdiction was conferred to revoke probation for a preprobation offense. *See, e.g., United States v. Ross*, 503 F.2d 940 (5th Cir.1974). Based on these considerations, we believe that the new wording of the Comprehensive Crime Control Act of 1984, was intended to clarify the Probation Act. The subsequent enactment should therefore guide us in interpreting the prior Act.

Aside from a literal reading of the statute, we were persuaded in *Dick* by Congress' caveat that probation should not exceed five years. 18 U.S.C. § 3651. If a court considers events outside the period of probation, then, in effect, a convict may be "on probation" for far longer than five years. While this is no doubt true, we again find it instructive to examine the relevant provisions of the Comprehensive Control Act of 1984. The new legislation includes the same caveat that the term of probation should not last more than five years. 18 U.S.C. § 3565. It is important to note that the legislature did not, in enacting the new legislation, believe it inconsistent to limit the term to five years, while allowing revocation *at any time* before the term of probation expires. Guided by the policy of the Probation Act and subsequent congressional action, we conclude that the Probation Act should be more broadly construed than envisioned by *Dick*. Accordingly, we overrule *Dick* and hold that the Probation Act does not preclude a court from revoking probation for a preprobation offense. This opinion has been circulated among all the judges in regular active service in accordance with Circuit Rule 40(f). No judge favored a rehearing *en banc* on the question of overruling *United States v. Dick*, 773 F.2d 937 (7th Cir.1985).[5]

## III.

■ Next Yancey challenges the original revocation hearing on several grounds. Yancey claims that the court failed to make written findings, that the evidence was not

(b) Delayed revocation.—The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

4. In *Dick*, we read the Fifth Circuit's more recent pronouncement in *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984) to have severely limited the holding of *Ross*. But *Wright* only limits *Ross* to the extent that *Ross* could be read as allowing revocation for an offense committed

while the defendant was on parole. The court determined that *Affronti v. United States, supra*, prohibited application of the Probation Act "in such a way as to unnecessarily overlap the parole and executive-clemency provisions of the law." 350 U.S. at 83, 76 S.Ct. at 173–74; *Wright*, 744 F.2d at 1129.

5. Both *Veatch* and *Wright*, relying on *Affronti*, suggest that the district court can only modify probation when the defendant has not begun to serve a period of incarceration. *Veatch*, 792 F.2d at 50; *Wright*, 744 F.2d at 1131. Although we have some doubt as to the correctness of this holding, we need not decide this question because the defendant did not raise the issue on appeal."

sufficient, and that counsel was ineffective. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that the procedures outlined in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), should apply with equal force to probation revocation hearings. *Morrissey* required written notice of the alleged violations; disclosure of adverse evidence; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and "a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation." *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762. The district court did not enter formal written findings of fact. The court did, however, make oral findings of fact at the time of revocation which have been transcribed. Moreover, on August 27, 1986, the court issued a written opinion in which it incorporated the previous oral findings by reference. The basis for requiring a written statement of facts is to ensure accurate fact finding and to provide "an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano,* 471 U.S. 606, 613–14, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985). We find that these goals are satisfied when the oral findings in the transcript enable a reviewing court to determine the basis of the judge's decision to revoke probation. *Cf., Morishita v. Morris,* 702 F.2d 207 (10th Cir.1983). *But see United States v. Smith,* 767 F.2d 521 (8th Cir.1985). The transcript here is adequate for that purpose, although, of course, written findings in strict accord with *Morrissey, Gagnon* and *Romano* would be preferable. Accordingly, Yancey cannot claim a constitutional violation based on the court's failure to enter written findings.

▇ The oral findings made by the district court show that the judge considered the seized letter and drew reasonable inferences therefrom. The court noted that the defendant used an alias in the letter, told the addressee that she had been in an accident with him, that her name was Janice Johnson and that they would split the pro-

ceeds. Based on these facts, the court concluded that although there had been an accident on a CTA bus, neither the defendant nor Janice Johnson was on the bus at the time. The judge found the claim to be fraudulent. In addition, the court noted that Yancey's conduct was similar to prior acts for which Yancey was convicted. While this circumstantial evidence and the inferences drawn therefrom, might not be sufficient to find Yancey guilty of the act charged in a criminal case, it satisfies the requirement for proof by a preponderance necessary in probation revocation hearings. We determine that the evidence was sufficient to support an order revoking probation.

Yancey claims that he was denied effective assistance of counsel at his revocation hearing in violation of the sixth amendment. The government contends that Yancey waived this claim by failing to present it below. On examination of the record, we find that Yancey adequately raised the issue below. (*See* Memorandum in Opposition to Government's Motion for Supplemental Findings Pursuant to Remand and in Support of Defendant's Motion for a Hearing; R. # 149). Accordingly, we will address the merits of the issue.

▇ There can be no challenge to the adequacy of counsel unless there is an underlying right to counsel in a particular proceeding. The right to counsel at probation revocation hearings is not absolute. *Black v. Romano,* 471 U.S. at 612, 105 S.Ct. at 2258; *Gagnon v. Scarpelli,* 411 U.S. at 790, 93 S.Ct. at 1763. In *Gagnon,* the Supreme Court refused to adopt a *per se* rule requiring counsel at all probation revocation hearings, and decided instead that the issue should be approached on a case-by-case basis. *Gagnon* at 790, 93 S.Ct. at 1763. But, even if Yancey could establish a right to counsel below, he must demonstrate the inadequacy of the attorney representing him. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) a defendant must show both that counsel's conduct fell below a standard of minimum competence and that counsel's conduct prejudiced the

defense. *Id.* at 687, 104 S.Ct. at 2064. A strategic decision, even if clearly wrong in retrospect, cannot support a claim that counsel's conduct was deficient. *Id.* at 689–91, 104 S.Ct. at 2065–66.

■ Yancey asserts that his counsel ignored his request to call witnesses. In addition, Yancey argues that there is no indication in the record that his attorney interviewed potential witnesses prior to the hearing. As we noted in *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008 (7th Cir.1987), "[w]hen the allegation of ineffectiveness of counsel centers on a supposed failure to investigate, we cannot see how, ... the petitioner's obligation can be met without a comprehensive showing as to what the investigation would have produced." *Id.* at 1016. Even to establish a right to a hearing on the sixth amendment claim, Yancey would have to have shown some basis for his claim. In support of his claim, Yancey submitted a single affidavit. The affidavit was made by a Julie Patrick who averred that she had met Raymond Thompson and Janice Johnson in a CTA bus accident in June, 1983. While this is clearly not the comprehensive showing demanded by *Cross*, we find it does raise an issue sufficient to require a hearing below on defendant's ineffective assistance of counsel claim. We emphasize, however, that on remand Yancey must not only satisfy the strictures of *Strickland*, but must also demonstrate that his particular case required counsel below. If the court determines that the guidelines suggested in *Gagnon* would not mandate that counsel be appointed, no further inquiry need be made.

Although we cannot find that Yancey committed "fraud at sentencing," we find that the district court had authority to revoke his probation even without such a finding. In addition, we find that the case should be remanded to the district court for the limited purpose of determining whether Yancey can show a right to counsel and, if so, whether counsel was inadequate.

The order revoking probation is

AFFIRMED IN PART, REVERSED IN PART and the cause is REMANDED.