**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paul James TAYLOR,**
**Defendant–Appellant.**

No. 90–7098.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1991.

Peter J. Madden, Madden & Soto, Mobile, Ala., for defendant-appellant.

Richard W. Moore, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before CLARK and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Paul James Taylor appeals from the judgement of the United States District Court for the Southern District of Alabama revoking his probationary sentencing resulting from two convictions in 1986 for the possession with the intent to distribute and distribution of cocaine. He is currently incarcerated, serving a 30–year prison sentence, for those offenses. On appeal he complains that (1) the district court did not have the power to revoke his probation since the sentence of probation had not commenced; (2) the court erred in admitting hearsay testimony into evidence at the revocation hearing in violation of his sixth amendment right to confront and cross examine witnesses; (3) the court abused its discretion by denying a motion for a continuance at the revocation hearing; and (4) the delay between the issuance of the warrant and the hearing violated due process. We affirm.

BACKGROUND

In May 1981, Taylor was convicted of possession of cocaine with intent to distribute and was sentenced to three years in prison plus a five-year special parole term. After serving eighteen months of his prison sentence, Taylor was paroled on October 4, 1982. His parole under the 1981 prison sentence expired on June 4, 1984 and he began serving the five-year special parole term for the 1981 offense the next day, June 5, 1984. Expiration of the special parole term was scheduled for June 5, 1989. On March 10, 1986, a special parole term violator warrant was issued based on the alleged possession and sale of cocaine. Three months later, on June 19, 1986, the special parole was revoked. Taylor eventually pled guilty to possession with the intent to distribute and the sale of cocaine in the United States District Court for the Southern District of Alabama on November 19, 1986. He was given a suspended sentence and placed on probation for five years.[1] Probation from the 1986 guilty plea was not to begin until he completed service of all sentences arising out of the 1981 conviction, including parole. He was released from custody to finish serving the special parole term from the 1981 case on May 14, 1987. Expiration was still scheduled for June 5, 1989.

---

1. The record does not state the terms of the   suspended sentence.

In May of 1988, Taylor tested positive for cocaine use. On September 7, 1988, he informed his parole officer that he had been in the hospital suffering from a self-inflicted gunshot wound. He later told his parole officer that he was shot by an angry girlfriend. According to the parole officer, Taylor did not tell him about the girlfriend when they first spoke because he did not want his wife to know about the other woman. During a regularly scheduled meeting with his parole officer, after he got out of the hospital, Taylor admitted owning a .32 calibre pistol. On October 24, 1988, a special parole term violator warrant was issued based on Taylor's alleged possession and use of drugs and unauthorized possession of a firearm. When he was arrested on October 28, 1988, the marshals found crack cocaine in the kitchen of his home and in a pick-up truck owned by Taylor. The marshals never found the pistol he admitted owning, however they discovered numerous rounds of ammunition. On January 20, 1989, after a full parole hearing, the special parole term from the 1981 conviction was revoked.[2]

On February 21, 1989, a petition for revocation of the probation imposed in the 1986 sentence was filed alleging unauthorized possession of a weapon and possession of cocaine. The same day the district court signed a warrant and detainer. At that point Taylor had not begun serving the probation sentence from the 1986 case. He was still serving the sentence from the 1981 case. On February 1, 1990, the district court held a probation revocation hearing. The government's case was based on the testimony of two witnesses, John Lindell, Taylor's parole officer and James Alston, a deputy United States Marshal. Much of Lindell's testimony was hearsay. Besides relating to the court the conversation he had with Taylor, Lindell also testified he received information from unnamed sources linking Taylor to numerous shoot-ings and drug-related crimes. Alston's testimony concerned the search of Taylor's home that resulted in the discovery of the cocaine. After hearing all the evidence the district court revoked Taylor's 1986 probation and sentenced him to thirty years in prison.[3]

## DISCUSSION

### The District Court's Power To Revoke Taylor's Parole

■ The district court's power to grant or revoke probation derives solely from Congress. *Affronti v. United States*, 350 U.S. 79, 83, 76 S.Ct. 171, 174, 100 L.Ed. 62, 66 (1955). The authority of the federal courts to grant or revoke probation is contained in 18 U.S.C.A. § 3653. (West, repealed 1987). That authority is limited, though, by the constitutional restraints of the separation of powers. *Affronti*, 350 U.S. at 83, 76 S.Ct. at 173, 100 L.Ed. at 66. The authority to modify a prisoner's sentence after he has begun serving the sentence is reserved to the executive branch, as well as the right to grant parole and pardons. *Id.*, at 82, 76 S.Ct. at 173, 100 L.Ed. at 66. The same is true of consecutive sentences arising out of one trial. *Id.* at 82, 76 S.Ct. at 173, 100 L.Ed. at 66. "[P]robationary power ceases with respect to all of the sentences composing a single cumulative sentence immediately upon imprisonment for any part of the cumulative sentence." *Id.* at 83, 76 S.Ct. at 174, 100 L.Ed. at 67.

Prior to the enactment of the Federal Sentencing Guidelines, the courts were vested with much discretion in sentencing, including the grant or revocation of probation. The guidelines, which took effect November 1, 1987, limited much of the discretionary power of the district courts in sentencing. 18 U.S.C.A. App. 4 (West 1990). Here the Federal Sentencing Guidelines are not applicable because Taylor's criminal acts occurred prior to November 1, 1987.

---

**2.** Taylor is not challenging the validity of that hearing.

**3.** For cases arising out of acts committed prior to the implementation of the Federal Sentencing Guidelines, 21 U.S.C.A. § 841(b)(1)(A) (West 1981) proscribed the allowable sentences for possession of a controlled substance as defined by 21 U.S.C.A. § 841(a). The maximum allowable sentence for a person convicted a second or third time of possession of a controlled substance was 30 years imprisonment.

*See United States v. James*, 848 F.2d 160, 162 n. 2 (11th Cir.1988). In that posture, the standard of review for probation revocation is abuse of discretion. *See United States v. O'Quinn*, 689 F.2d 1359 (11th Cir.1982).

The disputed language of section 3653 provides that probation may be revoked for acts occurring "within the probationary period." [4] 18 U.S.C.A. § 3653 (West, Repealed 1987). This court and the Fifth Circuit Court of Appeals have consistently interpreted section 3653 to allow a district court to revoke a probation sentence for acts committed after sentencing but prior to serving the sentence. *See United States v. James*, 848 F.2d 160 (11th Cir. 1988); *United States v. Ross*, 503 F.2d 940 (5th Cir.1974).

The language of section 3653 does not expressly provide for revocation prior to service of the sentence and while serving a previous sentence for another crime. *Affronti* by negative inference seems to indicate that a district court has such power. The Court's reasoning in *Affronti* was based on the separation of powers. *Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955). However the *Affronti* decision precludes the courts from modifying a sentence after service of a term has begun. *Id.* Specifically, the Court held that a court cannot modify *consecutive* sentences once service of the first sentence has commenced. *Id.* Essentially the Court, for modification purposes, treats consecutive sentences as one continuous sentence.

The Fifth Circuit Court of Appeals concluded that the decision in *Affronti* permits courts to modify a sentence if the defendant commits another crime prior to serving the sentence. *United States v. Ross*, 503 F.2d 940 (5th Cir.1974). Relying on the ambiguous language of section 3653 and the *Affronti* decision the Fifth and Eleventh Circuits have approved revocation of probation for conduct occurring prior to commencement of service of the sentence. *United States v. Ross*, 503 F.2d 940 (5th Cir.1974); *United States v. James*, 848 F.2d 160 (11th Cir.1988). "Sound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences; an immediate return to criminal activity is more reprehensible than one which occurs at a later date." *Ross*, 503 F.2d at 943.

In *Ross*, the court imposed a sentence of three years imprisonment and a three-year special parole term for conspiring to distribute marijuana. *Ross*, 503 F.2d at 941. The court suspended the three years imprisonment in favor of incarceration for four months. The court also provided that Ross should serve five years on probation after he was released from custody. Execution of the sentence was stayed for a week to allow Ross to get his affairs in order. He was arrested after he returned home on a state charge for possession of narcotics. The court then revoked his pro-

---

4. The third and fourth paragraphs of 18 U.S.C.A. § 3653 read as follows:

At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period. Such warrant may be executed in any district by the probation officer or the United States marshal of the district in which the warrant was issued or of any district in which the probationer is found. If the probationer shall be arrested in any district other than that in which he was last supervised, he shall be returned to the district in which the warrant was issued, unless jurisdiction over him is transferred as above provided to the district in which he is found, and in that case he shall be detained pending further proceedings in such district.

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed. 18 U.S.C.A. § 3653 (West, Repealed 1987).

bation and ordered his imprisonment for three years. *Id.* at 942.

James pled guilty to receiving and possessing stolen mail. The court released him pending a presentence investigation. Two months later he was sentenced to five years probation. Soon afterwards the court learned that during the interim of his guilty plea and sentencing, James had committed a state offense and there was a warrant out for his arrest. The district court revoked his probation and sentenced him to four years in prison. *United States v. James*, 848 F.2d 160, 160–61 (11th Cir. 1988).

Taylor maintains that *Ross* and *James* are distinguishable on their facts and therefore not applicable. He points out that *Ross* had not begun to serve any sentence before his suspended sentence was revoked, while Taylor was already serving a special parole term for his 1981 conviction. James, on the other hand, started to serve his sentence of probation before the court became aware that he had committed a crime between the time of his conviction and sentence. The court, while applying section 3653, based its decision to revoke James' sentence on a fraud on the court theory. Thus, Taylor argues, *James* is also inapplicable.

However, Taylor had not begun serving the probation term for the 1986 sentence. In that sense his situation is similar to that of Ross. In *James,* the offense giving rise to the revocation of James' probation was committed before he commenced serving the sentence. Taylor was charged with possession of cocaine and possession of a firearm by a convicted felon before he began serving the 1986 sentence of probation.

Taylor also cites a Fifth Circuit case which he argues limits the *Ross* decision. *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984). However, Taylor's analysis of the holding in *Wright* is flawed. *Wright* actually reaffirms the holding in *Ross*. Thus, it does not matter whether we base our conclusion on *Wright* or *Ross* because the result would be the same.

*Wright,* as was the case in *Affronti,* dealt with the modification of a sentence that the defendant was already serving. Wright was sentenced to consecutive sentences arising out of the same indictment. *Wright,* 744 F.2d at 1128. He was sentenced to five years imprisonment on Count 1. On Count 2 he was sentenced to five years imprisonment which was suspended to five years of supervised probation. The sentence on Count 2 was " 'to run consecutive to the sentences as to Count 1.' " *Id.* While paroled from prison, and before commencing service on Count 2, he committed a state offense and was sentenced to three years imprisonment in the state penitentiary. *Id.* The district court, relying on *Ross,* revoked Wright's probation as to Count 2. The appellate court, relying on *Affronti,* reversed the district court. *Id.* at 1131.

The court took *Affronti* to mean that a court cannot modify consecutive sentences once service has begun on the first sentence. *Id.* (citing *Affronti v. United States*, 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62, 67). "[T]he district court was without power, once the defendant commenced service of the first cumulative sentences, to grant or revoke probation as to a consecutive sentence, even though it had not yet commenced." *Id.* The court noted that a district court only has the power pursuant to Fed.R.Crim.P. 35 to modify a sentence once service has started and then only within 120 days. *Id.*

There is ambiguous language in *Wright* that implies the Fifth Circuit may have limited *Ross* and its progeny to their facts or to "fraud on the court" scenarios. *Id.* at 1130–1131.[5] However, a close reading of *Wright* reveals that the language relied on by Taylor is at the least speculation about how the court may react in cases somewhat similar to *Ross.* At the most the language

---

5. The apparent rationale for this exception [referring to *Ross* ] is in the nature of a "fraud at sentencing" concept, whereby—*before* the defendant commences service of any sentence imposed—the district court learns of a fact known to the defendant, but previously unknown to the court, that would have altered the court's sentencing decision.

*Wright,* 744 F.2d at 1131 (emphasis in original) (citations omitted).

is dicta. The court in reality reaffirms the holding of *Ross.*

> If our circuit decisions (*see* note 3, *supra*) were correctly decided, then, they [*Ross*] stand for a limited exception to the application of the literal wording of the probation statute: where the defendant receives a probationary sentence, it may be revoked because of an illegal act committed prior to its commencement only when the defendant has not commenced actual service of any sentence cumulatively imposed.

*Wright,* 744 F.2d at 1131.

Thus, as we can see, *Wright* follows the rationale of *Affronti.* Like the *Affronti* case and unlike the case at bar, *Wright* involved modification of *consecutive* sentences arising out of the same indictment. However, since *James* was decided in our circuit and cites approvingly to *Ross,* we are not bound by the ambiguous language of *Wright* which purports to limit *Ross.*

Taylor was on parole for the 1981 offense. The sentence of probation was for the 1986 offense. He was not scheduled to begin service of the 1986 sentence until after he had completed serving the 1981 sentence. Unlike *Wright* we are dealing with separate crimes and separate sentences resulting from separate trials. *Affronti* held that courts cannot modify a *cumulative* sentence arising out of the same indictment once service has begun. Only the executive branch has the power to modify such a sentence. *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955). Taylor was serving the sentence for the 1981 conviction and had yet to begin serving the sentence for a separate 1986 conviction. Hence, the district court had the power to revoke the 1986 sentence of probation.

Based on the foregoing, we cannot say that the district court abused its discretion by revoking the probation term. There is

little doubt that Taylor knew the terms of his parole and future probation. He knew he was not supposed to have a weapon or illegal drugs and that further infractions of the law would send him back to prison.

*The Hearsay Claim*

Taylor asserts that the district court erred in admitting into evidence hearsay testimony of the United States Probation and Parole Officer. Both the government and Taylor agree that a probation revocation hearing is analogous to a sentencing hearing. A trial judge has broad discretion in deciding the appropriate criminal sentence.[6] *United States v. Reme,* 738 F.2d 1156, 1167 (11th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). As long as the sentence is within the statutory limit, an appellate court will not review the sentence. However, the court will review the process by which a district court goes about imposing a sentence. *Id.* at 1167. *See United States v. Clements,* 634 F.2d 183, 186 (5th Cir.1981).

In sentencing hearings and in probation revocation hearings, Congress has given the trial court wide latitude in the information the court may receive in reaching its decision.[7] Admission of hearsay evidence in probation hearings does not violate due process, as long as it bears some indicia of reliability. *Reme,* 738 F.2d at 1167. If admission of hearsay evidence has violated due process, the defendant bears the burden of showing that the court *explicitly* relied on the information. *Id.* The defendant must show "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." *Id.*

Even though some of the statements by the probation officer concerning alleged crimes committed by Taylor and reported to the probation officer may not be as reliable as direct evidence, there is no

---

**6.** As noted earlier, this discretion has been since limited by the enactment of the Federal Sentencing Guidelines (18 U.S.C.A.App. 4 (West 1990)).

**7.** "No limitation shall be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C.A. § 3577 (West 1985).

explicit evidence that the district court relied on those statements. There was sufficient direct evidence concerning the weapon and drug charges and Taylor's past criminal behavior to support the judge's decision to revoke probation and sentence Taylor to thirty years imprisonment.[8] *See Reme*, 738 F.2d at 1167; *United States v. Clements*, 634 F.2d 183, 186 (5th Cir.1981). Lastly, there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts. "[A]ll that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." *United States v. Rice*, 671 F.2d 455, 459 (11th Cir.1982). Therefore, we find that the district court neither violated Taylor's sixth amendment right of confrontation nor explicitly relied on the hearsay evidence.

### The Request For A Continuance

■ Taylor also assigns as error the denial of the district court for a continuance once the court allowed the probation officer to testify to out-of-court statements. Because we find that there is no evidence that the district court relied on the hearsay evidence, Taylor suffered no harm when the court denied the continuance. Furthermore, Taylor made no showing that by granting a continuance any "substantial favorable evidence would be tendered by [a] witness, that [a] witness [was] available and willing to testify, and that the denial of the continuance would materially prejudice the defendant." *United States v. Miller*, 513 F.2d 791, 793 (5th Cir.1975). The district court did not abuse its discretion in denying the continuance.

### Due Process

■ Taylor next claims that he was denied due process when the district court

erred in denying a motion to dismiss the revocation hearing since it was held a year after the warrant and service of the detainer. Taylor acknowledges that revocation hearings are not criminal prosecutions under the sixth amendment and thus, the defendant is not constitutionally guaranteed a speedy hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656, 661–62 (1973). However, the Supreme Court has held that due process does protect the liberty interest of a probationer or parolee. *Id.* at 781, 93 S.Ct. at 1759, 36 L.Ed.2d at 661.

■ Though the sixth amendment does not guarantee a speedy hearing for probationers or parolees, he urges this court, by analogy, to apply the speedy trial analysis to revocation hearings. Taylor asks us to adopt the speedy trial balancing test the Supreme Court set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[9] This involves a balance of three factors in addition to the length of the delay: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530–33, 92 S.Ct. at 2191–93, 33 L.Ed.2d at 116–118. Even if we were to adopt this criteria for parole and probation revocation hearings, we find that defendant suffered no harm by the one year delay because it did not deny him the opportunity to vigorously contest the violation. *See United States v. Williams*, 558 F.2d 224 (5th Cir.1977). Also, Taylor's due process argument is premised on the hearsay allegations. Since we have already found that there was no showing that the judge explicitly relied on the hearsay violations the due process claim must fail.

Accordingly, the judgement of the district court is

AFFIRMED.

---

8. The government argues that if it were not for the plea agreement in 1986, Taylor would have received thirty years in prison instead of a suspended sentence and probation. There is no clear-cut evidence in the record to support this argument, but the plea agreement is referred to by the government during the revocation hearing. R2–57–58 (Transcript of Probation Revocation).

9. The Seventh Circuit recently adopted this test as a framework for deciding if a probationer received a prompt hearing in *United States v. Scott*, 850 F.2d 316, 320 (7th Cir.1988) (thirteen month delay found not to violate due process).

CLARK, Circuit Judge, dissenting in part:

I concur in all of those parts of the majority opinion except the court's holding that the district court had jurisdiction to revoke Taylor's probation sentence and to re-sentence him to a term of thirty years. At the time of the revocation and re-sentencing, Taylor was in the custody of the Attorney General and under the supervision of the U.S. Parole Commission pursuant to the Commission's revocation of Taylor's special parole term. The revocation of the special parole term had as its basis the very same criminal act which was the basis of the district court's revocation of the probation. The law is clear that the district court and the Parole Commission cannot have concurrent jurisdiction to punish an errant parolee. The reason is also clear—Congress has provided otherwise as discussed by the United States Supreme Court in *Affronti v. United States*.[1]

In November 1986 while serving a five-year special parole term which was to expire on June 5, 1989, Taylor was convicted of selling cocaine and sentenced by the district court to five years probation to commence on the expiration of the special parole term. The special parole term was revoked by the U.S. Parole Commission at the time of Taylor's arrest in 1986. In May 1987 Taylor was released to serve the remainder of his special parole term outside of prison. Erring again in late 1988, Taylor's special parole term was revoked on January 20, 1989 by the Parole Commission. On February 1, 1990, while Taylor was in prison serving the balance of his special term, the district court revoked the November 1986 probation sentence of five years and sentenced Taylor to a term of thirty years.

The majority maintains that the cases of *United States v. Ross*[2] and *United States v. James*[3] are applicable, reasoning that in

those cases, the conduct leading to the revocation of probation occurred prior to the start of the sentence that included the imposition of probation. However, these cases do not provide any guidance on the issue before us. Neither *Ross* nor *James* dealt with circumstances involving the overlap of executive and judicial powers. In *Ross*, the defendant was arrested during the one-week grace period the district court had given him to put his affairs in order prior to being imprisoned.[4] The defendant thus had not surrendered to the Attorney General, and the defendant had not previously been convicted of any other charges. Similarly, in *James* the defendant was released after conviction pending the completion of a presentencing report.[5] The defendant was not then serving any other sentence. Both *Ross* and *James* granted district courts the power to revoke probation in the interstices between conviction and surrender to the Attorney General. Neither case stands for the proposition that federal courts have the power to intervene in the executive branch's exercise of its parole powers.

The majority valiantly but ineffectually attempts to distinguish the Fifth Circuit's decision in *United States v. Wright*.[6] *Wright* involved a defendant who had been sentenced on two counts. The first count was a term of imprisonment and the second count was a term of probation. The terms were to run consecutively. While on parole from the sentence of imprisonment, the defendant committed a state crime, and the district court revoked probation.[7]

The opinion in *Wright* carefully differentiated between probationary sentences and sentences of imprisonment that lead to parole. Probationers are supervised by judicially appointed probation officers, and the courts' powers to impose probation arise solely from legislation. In contrast, parolees are supervised by the United States Parole Commission, an agency of the exec-

---

1. 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955).

2. 503 F.2d 940 (5th Cir.1974).

3. 848 F.2d 160 (11th Cir.1988).

4. 503 F.2d at 942.

5. 848 F.2d at 160–61.

6. 744 F.2d 1127 (5th Cir.1984).

7. *Id.* at 1128.

utive branch, which is empowered to grant or revoke parole to persons sentenced to prison. The opinion noted that Wright's parole was clearly subject to revocation if he committed any crime during its term.[8]

*Wright* quoted from the probation statute, which then stated, "[t]he period of probation, together with any extension thereof, shall not exceed five years," [9] and showed that the exception to this language created by *Ross* is not unlimited. The *Wright* court stated, "It is true that *Ross* and its progeny have, despite the express wording of the probation statute upon which Wright relies, carved out an exception permitting the sentencing court to revoke the probation of a defendant, even though he has not yet begun to serve his probationary sentence, when he commits an illegal act. However, in all of these decisions, the illegal act committed occurred prior to the commencement of service by the defendant of any sentence imposed at the time the probationary sentence was imposed." [10] The opinion in *Wright* also stated, "No decision of this circuit has held that it is within the discretion of a sentencing court to revoke probation, for an act committed prior to the probationary period, for an act committed while a convicted person is on parole from another sentence before his consecutive probationary term commences. Such a holding, indeed, would be contrary to the ruling of the Supreme Court in *Affronti*." [11]

*Wright* then held that "overlap [between the executive and judicial branches] certainly occurs if the probation statute is interpreted so as to permit the same pre-probation violation to serve as cause both to revoke the parole on a prior sentence and also to revoke the uncommenced probation on a consecutive sentence." [12] Here, we have exactly the case in *Wright,* as the same misdeed was used to permit revocation of Taylor's parole and probation.

The language from *Wright* quoted by the majority is not to the contrary. This language states that probation "may be revoked because of an illegal act committed prior to its commencement only when the defendant has not commenced actual service of any sentence cumulatively imposed." [13] The *Wright* court understood this exception as *only* applying "*before* the defendant commences service of any sentence imposed." [14] Because Taylor's probation was revoked *after* he had begun "service of *any* sentence imposed," *Wright, Affronti* and the statute forbid district courts from revoking probation during the time when defendants are in the custody of the executive branch.

The relevant statutory language states unambiguously that probation may be revoked only "within the probation period." [15] The Supreme Court in *Affronti* remarked, "Federal judicial power to permit probation springs solely from legislative action. The authority to put a convict on probation for an uncommenced term, after service of an earlier term has begun, has not been clearly given." [16] The same reasoning applies in a situation where, as here, probation has been revoked before its term was commenced. The majority has failed to follow the usual requirement that criminal statutes be interpreted strictly.

The facts of this case provide an excellent example of the concrete harm that occurs from such overlap. Appellant's probation officer did not explain to appellant

8. *Id.* at 1128–29.

9. 18 U.S.C. § 3651 (repealed 1987).

10. 744 F.2d at 1130 (footnote omitted).

11. *Id.* (citation omitted).

12. *Id.* at 1130–31; *see also United States v. Fryar,* 920 F.2d 252, 256 (5th Cir.1990) ("To prevent overlap between the judicial and executive spheres of power, *Wright* held that when a court has imposed a probationary sentence consecutive to another sentence, the court lacks power to revoke probation for a violation of a condition that occurred before the probationary term commenced but while the defendant was on parole from a prior sentence.").

13. 744 F.2d at 1131.

14. *Id.* (emphasis in original).

15. 18 U.S.C. § 3653 (repealed 1987).

16. 350 U.S. at 83, 76 S.Ct. at 174 (citation omitted).

the terms of his probation when appellant was released on parole in May of 1987, because appellant was subject to the terms of parole, not probation, at that time. Thus, appellant had no warning that, should he misbehave, both his parole and probation would be revoked.

I would reverse.