[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 8, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12549
Non-Argument Calendar

_____

D. C. Docket No. 06-00425-CR-CC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMIREZ WILLIAMS,
a.k.a. Diamond,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 8, 2009)**

Before EDMONDSON, Chief Judge, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Ramirez Williams appeals the 60-month sentence imposed upon revocation of his supervised release.[1] Williams violated the condition of his supervised release that he not commit another federal, state, or local crime: he pleaded guilty in Georgia state court to aggravated child molestation and enticing a child for indecent purposes, and he received a 10-year sentence. No reversible error has been shown; we affirm.

On appeal, Williams argues that the district court erred in quashing the subpoena for his supervised-release records because it prevented him from acquiring and presenting mitigating evidence about his performance on supervised release.[2] We review a district court's decision to quash a subpoena for an abuse of discretion. See United States v. Tokars, 95 F.3d 1520, 1537 (11th Cir. 1996).

Fed.R.Crim.P. 17 provides that a subpoena may order a witness to produce certain records that the subpoena designates. See Fed.R.Crim.P. 17(c)(1). Here, Williams requested a subpoena for his probation officer to produce his supervised release records so that he could obtain information to prepare his arguments for an in-range guidelines sentence under the 18 U.S.C. § 3553(a) factors. But Williams

_____

[1]Williams had been convicted of a drug conspiracy offense, for which he had been sentenced to 210 months' imprisonment. This sentence later was reduced to 72 months after the district court granted the government's Fed.R.Crim.P. 35(b) motion.

[2]Williams does not challenge that he violated the condition of his supervised release.

was able to obtain this information by having his probation officer testify at the revocation hearing about his general compliance with his supervised release.[3] And the government did not cross-examine the probation officer; so Williams did not need the records to refute what the government brought out. Thus, we cannot say that the district court harmfully abused its discretion in quashing the subpoena because Williams was otherwise able to bring out positive information about his performance under supervision. See United States v. De La Mata, 266 F.3d 1275, 1301 (11th Cir. 2001) (explaining that the exclusion of certain testimony was harmless because it "did not substantially affect [the defendant's] ability to present his good faith defense").

At the revocation hearing, the government presented testimony of two police officers about the supervised release violation. Officer William Crane testified about these things that he was told by a juvenile ("Juvenile 1") and his parents in response to a 911 call made by Juvenile 1: (1) Juvenile 1, after finding a website called "3P Entertainment," met Williams for an interview to be a "rap star," and (2) Williams performed oral sex on Juvenile 1 against his will, threw him in a burgundy Jeep Cherokee with Louisiana plates, and dropped him off in a Burger

---

[3]The probation officer testified that (1) in the two and a half years that Williams had been under supervision, his only violation up until that point was a positive marijuana screen; and (2) he was "conscientious in reporting" and "generally compliant" with his supervision.

King parking lot. Juvenile 1 also provided a phone number for Williams. These events formed the basis of the state court charge.

Officer John C. Davis testified about what another juvenile ("Juvenile 2") told him about Williams. According to Juvenile 2, (1) he met Williams when Williams asked him if he wanted to make a record, (2) Williams took Juvenile 2 to his house and made sexual advances toward him, and (3) Juvenile 2 was concerned about Williams because he had seen him in the neighborhood talking to other children and Juvenile 2 did not want anything to happen to the other children. Juvenile 2 also said that Williams drove a burgundy Jeep Cherokee with Louisiana plates and gave the same phone number for Williams as Juvenile 2. Charges were not pursued based on this incident.

Williams argues that the district court violated his due process rights by allowing unreliable hearsay testimony of the two police officers. Admission of hearsay evidence in revocation proceedings does not violate due process, as long as it bears some indicia of reliability. United States v. Taylor, 931 F.2d 842, 847 (11th Cir. 1991). When a defendant claims that his due process rights have been violated by the admission of hearsay evidence, he must show that the challenged evidence is materially false or unreliable. Id.

Here, we conclude that Williams did not meet his burden in showing

4

harmful error because we cannot say that the hearsay testimony was unreliable. The hearsay statements of Officer Crane ultimately led to the indictment to which Williams pleaded guilty and were obtained only a day after the incident described. And Officer Davis's statements bore an adequate indicia of reliability because they corroborated key information from Juvenile 1's statements: a description of Williams's car, a phone number, and that Williams purported to be connected to the music industry. See United States v. Reme, 738 F.2d 1156, 1168 (11th Cir. 1984) (whether the hearsay statement is corroborated or contradicted by other evidence in the record is relevant in determining reliability).[4]

Williams also argues that his sentence -- the statutory maximum -- procedurally and substantively is unreasonable. He contends that the district court did not explain adequately its variance from the guidelines range and that his supervised release violation was not egregious enough to warrant such a variance. We review a sentence imposed upon revocation of supervised release for reasonableness in the light of the section 3553(a) factors cited in 18 U.S.C. § 3583(e). United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). And we evaluate the substantive reasonableness of a sentence -- whether inside or

_____

[4]Williams argues that the hearsay statements about Juvenile 2 are not reliable because Juvenile 2's aunt stated to Officer Davis that she received a call from Williams saying he was Juvenile 2's lover on a day when Williams was, in fact, in jail. But this statement from the aunt does not bear on the reliability of Juvenile 2's statements to Officer Davis about Williams.

outside the guidelines range -- under a deferential abuse-of-discretion standard. Gall v. United States, 128 S.Ct. 586, 597 (2007) (in the context of original criminal sentencing).

We conclude that Williams's sentence is reasonable. Williams's sentence does not exceed the statutory maximum. See 18 U.S.C. § 3583(e)(3). Although Williams's sentence exceeded significantly the advisory sentencing range set out in the Chapter 7 policy statements, the district court was not required to sentence Williams within that range.[5] See United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006) (explaining that the recommended ranges are advisory and the court, while required to consider the ranges, is not bound by them). In addition, the district court heard Williams's and the government's arguments and noted that, after considering both the guidelines range and the section 3553(a) factors, an above-guidelines sentence was appropriate. The court noted the severe and egregious nature of the supervised release violation and the related uncharged conduct. The court also concluded that the sentence was necessary to punish Williams adequately, to protect the public, and to deter future similar conduct. See 18 U.S.C. § 3553(a)(1), (2)(A)-(C). The district court stated sufficient reasons for

---

[5]Williams's Chapter 7 sentencing range was 24 to 30 months, based on Williams's original sentencing criminal history score of I and commission of a Grade A supervision violation. See U.S.S.G. §§ 7B1.1(a)(1), 7B1.4(a).

its sentence and committed no procedural error.

And the district court's reasons are supported by the record. The egregious nature of Williams's offense is illustrated by the statutory maximum of life imprisonment that aggravated child molestation carries, see O.C.G.A. § 16-6-4(d)(1), and that Williams initiated inappropriate contact with two underage boys under the guise of being a member of the music industry. And, based on the account of Juvenile 2, Williams had been talking to other children in the neighborhood, indicating a need for the protection of the public and deterrence. In addition, Williams previously had received a downward departure, which also supports that his above-guideline sentence was reasonable. See U.S.S.G. § 7B1.4, comment. (n.4) ("Where the original sentence was the result of a downward departure . . . an upward departure may be warranted.").

On this record, no abuse of discretion has been shown; and we conclude that Williams's sentence is reasonable.

AFFIRMED.