[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11795
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cr-00020-CEM-KRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE S. EVANS,
a.k.a. P.K.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 7, 2018)

Before WILLIAM PRYOR, ANDERSON and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Jermaine Evans appeals the revocation of his supervised release after the district court concluded that he violated the conditions of his supervised release by committing new criminal offenses.  On appeal, Defendant argues that the district court violated his due process rights by admitting hearsay statements at his revocation hearing.  After careful review, we affirm.

## I.    **BACKGROUND**

In 2009, Defendant pled guilty to possession with intent to distribute crack cocaine and possession of a firearm during and in relation to a drug trafficking offense.  The district court sentenced Defendant to 111 months' imprisonment and five years of supervised release.

Defendant began serving his term of supervised release in January 2016. Less than one year later, however, the probation officer filed a petition with the district court seeking a warrant for Defendant's arrest, alleging that he had violated the conditions of his supervised release.  According to the petition, Defendant violated the conditions of his supervised release by committing new criminal conduct, namely robbery with a deadly weapon, aggravated battery, burglary of an occupied conveyance, and grand theft.

At the revocation hearing, the Government indicated that it had three witnesses who would provide testimony confirming the allegations in the petition: the victim of the assault and robbery, Christopher Tuten; the police officer who

discovered Tuten after the robbery and who interviewed him, and the federal probation officer supervising Defendant, who likewise had interviewed Tuten concerning the robbery. Government counsel indicated that Tuten has had mental health and substance abuse issues. Concurring, defense counsel advised the court that the "key issue" is whether Tuten mistakenly identified Defendant as his assailant, given Tuten's mental issues.

In response to the court's question as to the order in which the Government intended to present its case, the prosecutor stated that he planned to call the victim first, given that the majority of evidence would be coming from him. Earlier in the proceeding, the court had been asked to review the probation officer's file for any potential exculpatory or impeaching material on the victim, Tuten. To allow for this review, the court directed the Government to call the non-victim witnesses first, which the Government did.

Officer Vincent Ferraiuolo testified that while responding to a criminal-mischief call in October 2016, he found Christopher Tuten sitting in a car nearby. Officer Ferraiuolo described that Tuten was dazed, had dried blood around his mouth, and was grimacing in pain. When Officer Ferraiuolo began to explain that Tuten told him who had beaten him up, Defendant objected on hearsay grounds. The district court stated, "[i]t's a revocation hearing" and overruled the objection.

3

Tuten told Officer Ferraiuolo that he was beaten up by a man named T.J., who he described as a heavy-set black male with dreads.

Counsel for the Government asked Officer Ferraiuolo what Tuten said when he was presented with a photo line-up, prompting Defendant to object again on hearsay grounds. The district court overruled the objection. Officer Ferraiuolo responded that Tuten did not identify anyone in the photo line-up as his assailant, and he further noted that Defendant was not included in that photo line-up. The officer stated that Tuten later provided a description of his assailant and a composite sketch was made, which eventually made it possible for the officer to determine that T.J. was Defendant.

Defendant's federal probation officer, Kristi Listle, also testified at the hearing. Officer Listle explained that she spoke with Tuten, who was also on federal supervised release, after the assault. When asked if Tuten told her who assaulted him, Defendant objected on hearsay grounds. After the court overruled the objection, Officer Listle replied that Tuten told her that T.J., "otherwise known as Jermaine Evans (the defendant)" assaulted him.

Lastly, the victim, Christopher Tuten, testified that he knew Defendant as "T.J." from elementary school. He explained that on the night of the incident, Defendant pulled him out of his car because Defendant thought he had fired a gun at a nearby house. Defendant body slammed and kicked Tuten, and before Tuten

4

knew it, other people were kicking him too. Tuten was also hit with a two-by-four. After the attack, Tuten returned to his car and discovered that his cell phone and keys were missing. The next day, Defendant returned Tuten's car keys. Tuten testified that he suffers from bipolar disorder, manic depression, personality disorder, and psychomotor retardation. At the time of his attack, he had not been taking his medication, but he stated that his mental illnesses did not affect his memory.

Following the witnesses' testimony, the Government dismissed two of the violations alleged in the petition, moving forward with only the violations for aggravated battery and burglary of an occupied conveyance. The district court found by a preponderance of the evidence that Defendant violated the conditions of his supervised release. Specifically, the court stated that although there were some inconsistencies in Tuten's testimony, Tuten testified "without reservation" that Defendant was his attacker and there was evidence corroborating that Tuten was beaten up.

Based on a Grade A violation and a criminal history category of VI, the district court calculated the guideline range as 51 to 60 months' imprisonment. In a separate hearing, the court sentenced Defendant to 51 months' imprisonment.

## II.    DISCUSSION

A.    Standards of Review and Legal Principles Applicable Here

5

We review a decision to revoke supervised release, along with any evidentiary decisions made during the revocation proceeding, for an abuse of discretion. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (revocation of supervised release); *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001) (evidentiary decisions). Pursuant to 18 U.S.C. § 3583(e), a district court may revoke a defendant's supervised release and impose a sentence of imprisonment if the district court determines by a preponderance of the evidence that the defendant has violated a condition of supervised release. 18 U.S.C. § 3583(e)(3).

Although the Federal Rules of Evidence do not apply to supervised release revocation proceedings, the admission of hearsay evidence is not "automatic." *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). A defendant is entitled to certain minimal due process rights, including the right to confront and cross-examine witnesses. *Id.*; Fed. R. Crim. P. 32.1(b)(2)(C) (stating that the defendant must have an opportunity to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"). To determine whether or not to admit hearsay, a district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Frazier*, 26 F.3d at 114. The hearsay evidence must also be reliable. *Id.*

6

A district court's failure to conduct the balancing test constitutes error. *Id.* However, when properly considered evidence sufficiently establishes that the defendant violated the terms of his supervised release, any failure to engage in the balancing test is harmless. *Id.*; *see also United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (explaining that when the admission of hearsay violates a defendant's due process rights, the defendant must show: "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as a basis for the sentence." (quotation marks omitted)).

B.    Defendant's Due Process Rights Were Not Violated by Testimony of the Investigating Police Officer and His Probation Officer

Arguing at the revocation hearing that any prior statements by Tuten to Officer Ferraiuolo and Probation Officer Listle concerning the identity of Tuten's assailant constituted hearsay, Defendant objected to that testimony. The district court overruled the objections, at one point stating that this is "a revocation hearing." Raising a slightly different argument on appeal,[1] Defendant now contends that the district court violated his due process rights by considering this

---

[1] The Government asserts that we should review Defendant's argument on appeal for plain error because he objected only on hearsay grounds before the district court. Defendant did not specifically object under Rule 32.1 or argue that the court needed to engage in the balancing test under *Frazier*. On the other hand, his hearsay objection occurred in the context of a revocation hearing. *See Frazier*, 26 F.3d at 114 (explaining that the "admissibility of hearsay is not automatic" in a revocation hearing and that a defendant is "entitled to certain minimal due process" considerations, including "the right to confront and cross-examine adverse witnesses"). At any rate, we need not decide whether to review Defendant's argument for abuse of discretion or for plain error because it fails under either standard.

hearsay testimony.  Defendant implicitly concedes that, unlike in a trial, in a revocation proceeding, the rules of evidence do not apply and thus hearsay testimony can properly be admitted.  *See Frazier*, 26 F.3d at 112–114. Nonetheless, Defendant contends that the district court erred because, in admitting this hearsay testimony, it should have first conducted a *Frazier* balancing test to determine the reliability of the hearsay.  Defendant further contends that Federal Rule of Criminal Procedure 32.1(b)(2)(C) gave him the right to confront any adverse witnesses.

First, there clearly was no violation of Rule 32.1(b)(2)(C) in this proceeding. Rule 32.1(b)(2)(C) sets out an offender's rights at a revocation proceeding and provides that an offender shall have "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Tuten, the victim, was present at the hearing and Defendant thoroughly cross-examined him.

As to the district court's failure to engage in the *Frazier* balancing test, *Frazier* held that, notwithstanding the inapplicability of the federal rules of evidence in revocation proceedings, "the admissibility of hearsay is not automatic."  26 F.3d at 114.  This is so because a defendant in a revocation proceeding is nonetheless entitled to certain minimal due process requirements.  *Id.* Thus, before permitting the Government to introduce hearsay testimony at a

revocation proceeding, the district court must balance the defendant's right to confront adverse witnesses against the Government's reasons for not producing the witness. *Id.*

The district court did not conduct a *Frazier* balancing test, as it should have done had the testimony at issue constituted hearsay. Defendant, however, has failed to demonstrate that the testimony was hearsay. The federal rules of evidence provide that a statement is not hearsay if the declarant testifies, the declarant is subject to cross–examination, the statement is consistent with his testimony, and the statement is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground . . . ." Fed. R. Evid. 801(d)(1)(B). Here, Defendant, in cross-examining the victim, had suggested that the victim might be cooperating with the Government to ensure that his own supervised release not be revoked based on his own violations, as there had been a revocation notice lodged against the victim that had been dismissed prior to the hearing. That questioning suggested a "recent improper influence or motive" to testify. In addition, Defendant's theory of defense attacked the victim's credibility "on another ground," focusing on the victim's alleged inability to remember details based on

9

his mental and drug issues.  The prior statements tended to show a consistency in the victim's memories of the event.

In short, Defendant has failed to demonstrate that the testimony in question constituted hearsay, as opposed to prior consistent statements under Rule 801(d)(1)(B).  But even if the testimony did constitute hearsay, Defendant's due process rights were not violated because the declarant-victim was present, offered testimony, and was subject to cross-examination.  Indeed, the *Frazier* balancing test is not even apt in this situation.  That test calls for balancing the defendant's right to confront adverse witnesses against the Government's reasons for not producing the witness.  Here, the Government actually produced the declarant as a witness and Defendant's right to confront him was vindicated through his vigorous cross-examination of the declarant.

Ultimately, the district court found victim Tuten's testimony that Defendant was his attacker to be credible.  Indeed, it was Tuten's live testimony at trial—and the believability of that testimony—that led the court to conclude that Defendant was guilty of the charge.  Defendant acknowledged this fact, stating:  "The entire case the Government has presented rests on Mr. Tuten, who said unequivocally at the beginning that this crime was perpetrated by somebody named T.J."

In short, we conclude that the district court did not abuse its discretion when it admitted testimony concerning the victim's prior identifications of Defendant as

10

his assailant.  The victim testified and Defendant was able to fully cross-examine him.  Further, having found this testimony credible, the court did not abuse its discretion in finding Defendant to be guilty of this very violent assault and robbery.

Accordingly, the district court's revocation of Defendant's supervised release is **AFFIRMED**.

11