**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-11822
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

EMMANNUEL RODOLE FRANCOIS,
a.k.a Mono,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cr-60130-JIC-1

_____

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON,
Circuit Judges.

PER CURIAM:

Emmannuel Rodole Francois appeals the revocation of his supervised release. He argues that the government failed to produce sufficient evidence that he committed armed robbery and armed false imprisonment. He also argues that the district court violated *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994), when it admitted the victim's statements about those offenses without balancing his right to confrontation against the government's grounds for denying it. We affirm.

## I. BACKGROUND

In May 2018, a federal grand jury indicted Francois for possessing a firearm as a felon. 18 U.S.C. § 922(g)(1). He pleaded guilty, and the district court sentenced him to 57 months of imprisonment followed by three years of supervised release. As a condition of his supervised release, Francois was prohibited from committing another crime. He began his term of supervised release on February 17, 2023. On March 17, 2025, his probation officer petitioned to revoke that release and alleged six violations, including the commission of armed robbery and armed false imprisonment, in violation of Florida law, on or about December 13, 2024.

At the revocation hearing, the government's sole witness was Francois's probation officer, Shaina Kus, who testified about the December 13, 2024, incident. The government's evidence consisted of police body camera footage and a series of Ring surveillance videos from that day. The body camera footage recorded the victim, Taylor Angelis, in a hysterical and visibly shaken state immediately after escaping from her captors. She told the officers that

her captors held her at gunpoint for several hours in an Airbnb, threatened her life, and stole her vehicle, phone, and jewelry. She described how she escaped from the Airbnb and how her captors pursued her in a black vehicle. The footage also recorded officers speaking with a neighbor, who told them that he heard Angelis's screams and saw armed men pursuing her in a black vehicle.

The government introduced eight Ring surveillance videos from the Airbnb that recorded the events from earlier that morning. Officer Kus identified Francois in the footage and testified that she was "one hundred percent sure" it was him based on her familiarity with Francois's voice, gait, and mannerisms. The videos show Francois handling a firearm at 2:25 a.m., entering the Airbnb with a pistol in his waistband at 4:58 a.m., and engaging in a dispute with Angelis at 5:08 a.m. Finally, at 7:00 a.m., after someone asks, "Who let that bitch leave?" Francois exits the Airbnb, enters the driver's seat of a black vehicle parked in the driveway, and drives away with several other individuals who had exited the Airbnb.

Over Francois's repeated hearsay and confrontation clause objections, the district court admitted Angelis's statements. It found that her statements were reliable because they were "supported by both the video evidence" and Angelis's "obvious excited utterances." It also found by a preponderance of the evidence that Francois had committed the alleged offenses. It then revoked Francois's supervised release and sentenced him to 24 months of imprisonment followed by a year of supervised release.

## II. STANDARD OF REVIEW

We review a revocation of supervised release for abuse of discretion. *Frazier*, 26 F.3d at 112. A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3).

## III. DISCUSSION

The right to confrontation under the Sixth Amendment does not apply in revocation proceedings. *See United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015). Nor do the Federal Rules of Evidence. *Frazier*, 26 F.3d at 114. "Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic." *Frazier*, 26 F.3d at 114. Defendants are entitled to "minimal due process requirements," including "the right to confront and cross-examine adverse witnesses." *Id.* Federal Rule of Criminal Procedure 32.1 "applies to supervised release revocation" and "incorporates these same minimal due process requirements." *Id.* A defendant is entitled "to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." FED. R. CRIM. P. 32.1(b)(2)(C).

Hearsay is an out-of-court statement made by a declarant that a party offers to prove the truth of the matter asserted. FED. R. EVID. 801(c). In revocation proceedings, when "deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds

asserted by the government for denying confrontation." *Frazier*, 26 F.3d at 114. The hearsay statement must also be reliable. *Id.* Failure to conduct a balancing test before admitting hearsay in a revocation proceeding is harmless and does not require reversal if other properly considered evidence overwhelmingly proves that the defendant breached the terms of his supervised release. *Id.*

The district court did not abuse its discretion in revoking Francois's supervised release. Any error in the failure to conduct a *Frazier* balancing before admitting Angelis's statements was harmless because the properly considered evidence—independent of those statements—overwhelmingly proves that it is more likely than not that Francois breached the terms of his supervised release. *Id.* For example, the surveillance video from 5:08 a.m. recorded a dispute between Angelis and Francois and shows Angelis pleading with Francois that she had been mistaken for someone else. Even without Angelis's later statements to police, this video evidence directly connected Francois to the victim at the time of the alleged offenses. Other evidence also corroborated the criminal activity. Surveillance video from 7:00 a.m. shows Francois getting into the driver's seat of a black vehicle parked in front of the Airbnb and driving away with other individuals who had also exited the Airbnb. While these videos may not capture the specific moment property was taken, they capture the armed confrontation and a restrained victim and are sufficient independent evidence that satisfies the preponderance standard for revocation proceedings and makes any *Frazier* error harmless.

Francois argues that Angelis's credibility was "very much in question," and points to her arrest for armed burglary and her statement to police that her captors arrived at 5:00 a.m. from out of state, details that conflict with Francois's 2:30 a.m. arrival and Florida residency status. In any event, because independent surveillance video confirms Angelis's account, Francois cannot establish that Angelis's statements were unreliable or materially false. *See United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (explaining that, "[i]f admission of hearsay evidence has violated due process," the defendant must establish "that the challenged evidence is materially false or unreliable"). We now turn to the sufficiency of the evidence.

Sufficient evidence supports the finding, by a preponderance of the evidence, that Francois committed armed robbery and armed false imprisonment. Consistent with the harmless error standard in *Frazier*, the remaining evidence establishes Francois's involvement in the offenses even when Angelis's statements are excluded. Although Francois contends that the footage establishes at most his presence at the Airbnb, the record reflects some degree of active criminal participation. The surveillance footage and Kus's testimony place Francois at the Airbnb at 2:25 a.m., when he is seen handling a firearm. He is seen again at 4:58 a.m., at the time of the alleged offenses, entering the home with a pistol tucked into his waistband. He then engages in a dispute with Angelis at 5:08 a.m., exits the Airbnb at 7:00 a.m. after someone asks, "Who let that bitch leave?" and enters the driver's seat of a black vehicle in the driveway and drives away with several other individuals who had

also exited the Airbnb. These videos establish a level of participation that exceeds mere presence. From this evidence, the district court could find that it was more likely than not that Francois committed armed robbery and armed false imprisonment.

## IV. CONCLUSION

We **AFFIRM** the revocation of Francois's supervised release.