**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11566

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JUTAURIO PRESHAE CLEMONS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:09-cr-00043-VMC-TGW-1

_____

Before BRANCH, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Jutaurio Clemons brings this appeal to challenge the district court's revocation of supervised release. We affirm.

## I.

In 2009, Clemons was sentenced to 200 months' imprisonment and 60 months' supervised release for various drug trafficking and firearms offenses. As a standard condition of his supervised release, Clemons was ordered not to commit another crime for the duration of his release. *See* 18 U.S.C. § 3583(d).

In 2023, the U.S. Probation Office filed a petition alleging eight supervised release violations, including possession of a firearm, failure to report, failure to permit home visits, failure to participate in drug aftercare treatment, and others. Specifically, violations IV and V allege that Clemons committed second-degree attempted murder and armed robbery. Clemons denied these two charges but admitted to the rest.

At the revocation hearing, Detective Hector Torres testified about his investigation into the armed robbery that took place on August 14, 2022. Surveillance footage revealed that an unidentified assailant shot the victim multiple times before taking off with his phone and other belongings. The victim was left "fighting for his life at the hospital." When Torres tried to interview him the day after surgery, the victim was "in and out"—only "[v]aguely" remembering what happened and apparently "holding some things back." Torres followed up a few days later. This time, the victim came forward with the "full story" and identified Clemons as the attacker.

Sergeant Timothy Elmer also took the stand. At the hospital, Elmer showed the victim a photo lineup depicting

Clemons alongside five other individuals.   The victim again identified Clemons as the person who "ran up on me and shot me." An eyewitness at the scene likewise identified Clemons as the attacker through a photo lineup.

In light of this "pretty substantial" evidence, the district court found Clemons guilty of violations IV and V.  It sentenced Clemons to 57 months' imprisonment, to be followed by 60 months' supervised release.

On appeal, Clemons argues that the district court erred by relying on the victim's out-of-court identification.

## II.

We review a district court's revocation of supervised release, as well as its evidentiary rulings, for abuse of discretion.  *See United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994).  We review its factual findings for clear error.  *See United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015).

## III.

A district court may revoke a defendant's term of supervised release if it finds by a preponderance of the evidence that he violated a condition of that release.  18 U.S.C. § 3583(e)(3).

The Federal Rules of Evidence generally do not apply to supervised release proceedings.  Fed R. Evid. 1101(d)(3).  However, defendants are still "entitled to certain minimal due process requirements," including "the right to confront and cross-examine adverse witnesses."  *Frazier*, 26 F.3d at 114.  In deciding whether to

admit hearsay evidence, the district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation" and determine whether that evidence is reliable. *Id.*

To succeed on a due process claim, the defendant must show that "the challenged evidence is materially false or unreliable." *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (quotation omitted).[1]    Clemons contends that the victim's out-of-court identification is unreliable because the victim did not identify Clemons during his initial interview with Torres.    But that interview occurred while the victim was "in and out" of consciousness—on the heels of emergency surgery and still "fighting for his life at the hospital."    The district court was within bounds to accept the victim's later identification as his definitive account of what happened.    And the court did not clearly err by crediting that evidence.

Even assuming for argument's sake that the victim's identification is unreliable, it was "cumulative and only corroborated other evidence presented by the prosecution."    *See*

---

[1] While *Taylor* deals with the admissibility of hearsay statements during probation revocation proceedings, the "analysis of the revocation proceedings relating to probation and supervised release" is "essentially the same." *United States v. Mitsven*, 452 F.3d 1264, 1266 n.1 (11th Cir. 2006) (quotation omitted); *see also Frazier*, 26 F.3d at 113 (noting that "courts treat revocations the same whether they involve probation, parole, or supervised release").    Separately, Clemons did not object on the grounds that the district court failed to conduct a *Frazier* balancing inquiry.    We see no plain error on that front.

25-11566                Opinion of the Court                5

*United States v. Hock*, 995 F.2d 195, 197 (11th Cir. 1993).    An eyewitness at the scene separately identified Clemons as the attacker.[2]    Because that identification "constituted sufficient evidence for the district court to revoke [Clemons's] supervised release," any error is harmless.  *Frazier*, 26 F.3d at 114.

★    ★    ★

We **AFFIRM**.

---

[2] Clemons did not challenge the admissibility of the bystander's identification. Nor does he contend that this evidence is unreliable.